## J. B. SHERIFF & SON v. A. FULTON'S SON & CO.

### (Circuit Court, W. D. Pennsylvania. March 25, 1882.)

1. PATENTS FOR INVENTION—REISSUE—ENLARGEMENT OF CLAIMS.

Where the claim made in the original patent for a siphon pump was for a specific device described in the specifications and drawings, but in the reissue disappears from the patents, and substituted therefor is a sweeping claim covering every form of water ejectors, although the claim made in the reissue was originally allowable when the original patent was granted, after the lapse of nine years a reissue embodying so comprehensive a claim is invalid.

2. SAME—UNREASONABLE DELAY.

A delay of nine years is unreasonable on an application for a reissue wherein the original claim is enlarged.

In Equity.

*Bakewell & Kerr,* for complainants.

*M. D. Connelly,* for defendants.

ACHESON, D. J.    This suit is upon reissued letters patent No. 9,199, issued to Hugh Coll May 18, 1880, the bill charging infringement and praying for an injunction, etc.    The original letters patent, No. 110,-205, were issued to Coll December 20, 1870.    The invention, as the original and reissue both recite, consists in improvements to a siphon pump patented to said Coll June 8, 1869.

To the proper understanding of the case, therefore, a brief explanation of Coll's earlier letters patent, No. 90,930, dated June 8, 1869, seems necessary.    They relate to the construction of a steam siphon pump, or water elevator, having outer and inner pear-shaped hollow heads, so that a jet or current of steam shall elevate water and discharge it through and from either or both the heads.    These heads, respectively, have one end tapered down to the form of a tube or pipe, thus forming inner and outer discharge pipes, the inner one being much smaller than the outer one.    A steam-injection pipe is screwed into or cast on the outer or rear end of the outer head, and extends some distance into the inner head, which latter, at its rear end, is screwed on or otherwise fastened to or cast on the injection pipe.    Back of the discharging end of the steam-injection pipe inlets or openings are made in the inner head.    The steam passing out of the injection pipe into the inner discharge pipe, and thence into or through the outer discharge pipe, produces a vacuum in the heads, and the water coming up the induction pipe to fill the vacuum is caught by the flow of steam and forced out of the discharge pipes, and a regular current is established, which is kept up by the continual

pressure of the steam. By closing up the annular space between the two discharge pipes the water may be discharged entirely through the inner discharge pipe, being slightly warmed by this method. The claim in this patent is exclusively for the combination of the inner and outer pear-shaped heads with the injection pipe.

The invention secured by the letters patent of December 20, 1870, (No. 110,205,) is therein declared to be an improvement on Coll's said patented siphon pump, and to consist "in modifications of form and construction," whereby it is adapted to new uses, or made to accomplish old results in a better manner. The outer head being of the usual construction and having the usual water-inlet opening, and an opening for the insertion of the steam-injection pipe, the material modification is stated to consist in cutting off the base or blunt end of the inner pear-shaped head at or near the broadest part, and connecting this head, in casting, to the outer head by means of radial arms. In the specification the patentee states the advantage thereby secured to be as follows:

"The inner head, *d*, having a large unobstructed opening at its base, I have devised more particularly for use in pumping or ejecting bilge-water, the water out of tan-vats, etc. As some tan-bark is necessarily carried up with the water, the holes or passages for the water are apt to become clogged unless ample room be left for the flow of both. I thus adapt the double head to the uses described.'

The first claim of this patent (which is the principal and only material one) is in these words:

"The inner head, *d*, open at its rear end so as to leave an unobstructed opening around the steam-injection pipe for the passage of such pieces of solid matter as may be brought up by the water. such inner head, *d*, being connected to the outer head, *a*, by means of radial arms, *a*, all arranged substantially as described."

The application for the reissue (No. 9,199) was filed March 13, 1880, and is dated May 18, 1880. The specification of this reissue, after describing the invention and its advantages substantially as the original specification (No. 110,205) did, and stating that "this ejector operates on the same principle as my ejector patented June 8, 1869, does," proceeds to set forth other advantages neither mentioned nor hinted at in the original specification, (No. 110,205,) viz.: that the jet of stream is protected and surrounded by the inner head, which acts as a breakwater or dam to break the force or impact of the inflowing current, and hence does not condense so rapidly as in the old form of ejectors, where it came directly in contact with the whole

volume and unbroken force of the inflowing water in the outer head, and the force of the steam-jet is thereby preserved; that the forward end of the outer chamber is closed, and the entire discharge is through the inner head, and that the rear opening of the inner head extends over the induction opening, and acts as a breakwater, to deflect and turn the inflowing stream of water to the back part of the outer head and break its force.

The reissue (No. 9,199) has but one claim, which is as follows:

"A water ejector, provided with an inner head or shell, extending backward over the water-induction opening, and arranged with relation to the jet-pipe so as to protect the steam-jet from the direct impact of the inflowing current of water, the inner end of said head being provided with a large unobstructed opening, through which all the water passes to the discharge outlet of the ejector, substantially as and for the purpose described."

Upon a comparison of the original patent of December 20, 1870, with the reissue it is manifest that the claim made in the reissue is a great expansion of the original. Clearly the original patent did not cover and could not rightfully cover the inner head itself, for Coll's earlier patent showed an inner head, which, moreover, surrounded and protected the steam-jet from the direct impact of the inflowing current of water, and operated to retard the condensation of the steam. The specification of the patent of 1870 declares that invention to consist "in modification *of form and construction*" of Coll's siphon pump theretofore patented. These modifications are distinctly set forth and explained in the body of the specification, and are specifically claimed. In lieu of the inlets at the rear end of the inner head, the blunt end of this head is cut off, and at its rear end an unobstructed opening is left around the steam-injection pipe for the passage of such pieces of solid matter as may be brought up with the water. It is an essential feature of the device that the steam-injection pipe shall be inserted through the usual opening in the outer head into the inner head. Coll himself, testifying in this case in behalf of the plaintiffs, states that the difference between his patents of 1869 and 1870 is "a difference of construction only," and that the difference is in the large unobstructed opening in the rear of the inner head, and the manner in which the head is secured to the outer head, and putting this nozzle in and across the space between the inner and outer head." All this plainly appears, both by the specification and the drawing, and is specified in the claim. Undoubtedly the claim is for the specific device described.

But we search the reissue in vain for such limited claim. It has disappeared from the patent, and substituted therefor is a sweeping claim covering every form of water ejectors having an inner head or shell open at its rear end, and (within the limitations mentioned) *so arranged with relation to the jet-pipe* as to protect the steam-jet from the direct impact of the inflowing current of water. How comprehensive this claim is (or is supposed to be) can be best illustrated by reference to the siphon pump made or sold by the defendants, and which the plaintiffs contend infringes the reissued patent. The defendants' siphon pump (which it is plain does not embody the specific device claimed in the patent of 1870) has a permanently-fitted, bell-mouthed, open-ended, inner head or shell, which extends backward across the water-induction opening, but the steam-injection pipe does not enter the outer head at all. The steam-nozzle, which is screwed into the end of the outer head, but does not extend into the head, has several apertures, through all of which steam-jets enter the outer head. The steam-nozzle is opposite the mouth of the inner head, but between the latter and the steam openings there is an open space. These features (with other peculiarities) are found in letters patent dated February 2, 1875, granted to Louis B. Fulton and Julius Proeger.

Now it may well be that the claim made in the reissue was originally allowable when the patent of December 20, 1870, was granted; but Coll, having then limited his claim to a specific device, could he, after the lapse of more than nine years, procure a valid reissue embodying a claim so enlarged and comprehensive? I am of opinion that he could not. The delay was altogether unreasonable, and the reissue, therefore, without authority of law. The recent decisions of the supreme court in the cases of *Miller* v. *Bridgeport Brass Co.* 21 O. G. 201, and *James* v. *Campbell*, Id. 337, leave the question no longer an open one. An acquiescence by the patentee and his assignees, for so long a period in the terms of the patent as originally granted, created an equitable estoppel in favor of the public. *Combined Patents Can Co.* v. *Lloyd*, 21 O. G. 713; [S. C. 11 FED. REP. 149.]

It was, indeed, urged in justification of the reissue that the first claim of the original patent was inoperative and invalid because it included as a constituent element with the inner head the radial arms, by which the head is held in place; these arms, it is said, being a mere incident of convenience of construction, and having no functional relation whatever to the inner head or any other part of the organism in securing the objects to be attained, and the claim,

therefore, being bad under the doctrine of aggregation as enunciated in *Hailes* v. *Van Wormer*, 20 Wall. 353. If this were so, however, it by no means follows that upon a surrender at so late a day, to correct such mistake, the scope of the patent could be so enlarged as was here attempted. But the original claim was not obnoxious to the objection suggested. The radial arms, or their equivalent, seem essential to secure all the objects contemplated. At any rate, the effect of including them was to limit the claim, not destroy it. Unquestionably, the original claim was good for the specific device described.

Having reached the conclusion that the reissue sued on is invalid, the plaintiff's case therefore failing, it is, of course, unnecessary to consider the other defences relied on.

Let a decree be drawn dismissing the bill, with costs.